# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8747 | **DATE** | 12/9/2004 |
| **CASE TITLE** | Darlene Falcone vs. Village of Hanover Park, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
Status hearing set for 12/21/05 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 54 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TBK | courtroom deputy's initials | U.S. DISTRICT COURT 2004 DEC -9 PM 4: Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE FALCONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02 C 8747 |
| | ) | |
| VILLAGE OF HANOVER PARK, | ) | Judge Mark Filip |
| LAURA CONZEMIUS, | ) | |
| TODD CARLSON, | ) | |
| MICHAEL KOZENCZAK | ) | |
| and SGT. JOSEPH CIANCIO | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

**DEC 1 0 2004**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Darlene Falcone ("Plaintiff" or "Falcone") brings this action against the Village of Hanover Park ("the Village"), and Officers Laura Conzemius, Todd Carlson, and Michael Kozenczak and Sergeant Joseph Ciancio, all of the Hanover Village Police Department (collectively "Defendants"). Plaintiff alleges that Defendants committed various violations of her constitutional rights during her arrest for driving under the influence of alcohol ("DUI") and resisting arrest, the latter of which charges she was convicted of in a criminal trial in the courts of the State of Illinois. Specifically, Ms. Falcone alleges excessive force, unreasonable search and seizure, intentional infliction of emotional distress, and false arrest. Defendants have moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. As explained below, Defendants' motion is granted in part and denied in part.

1



BACKGROUND[1]

Plaintiff Falcone, a 57-year-old woman, was driving home from a Super Bowl party on

February 3, 2002. (D.E. 48, Plaintiff's Statement of Additional Facts ("Pl. SAF") ¶ 1.) That

night, Defendants Officers Carlson and Conzemius were on "saturation patrol," the goal of

which was DUI enforcement. (*Id.* ¶ 2.) Defendants assert that the officers observed Falcone

swerve over the fog line several times (D.E. 40, Defendant's Statement of Facts ("Def. SF") ¶

1[2]), but Plaintiff disputes that she committed any traffic violations (D.E. 48, Plaintiff's Response

---

[1] The relevant facts are taken from the Defendants' Local Rule 56.1 ("L.R. 56.1")
statement of facts and exhibits (D.E. 40) and from Falcone's response to Defendants' statement
of facts and additional facts (D.E. 48). Where the parties disagree over relevant facts, the Court
sets forth the competing versions. In addition, the Court, as it must, resolves genuine factual
ambiguities in Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).
L.R. 56.1 requires that statements of facts contain allegations of material fact, and the factual
allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*,
191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit has "consistently and repeatedly
upheld a district court's discretion to require strict compliance" with L.R. 56.1. *Bordelon v.
Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). The Court notes that
Defendants in particular have improperly denied a number of Falcone's factual assertions by
failing to explain why the proffered evidence is inadequate or objectionable. Thus, where those
factual assertions are properly supported by the record, the Court deems them admitted by
Defendant for purposes of this motion. *See Malec*, 191 F.R.D. at 584. The Court deems the
following statements of fact admitted for purposes of this motion: Plaintiff's Statement of
Additional Facts ("Pl. SAF") ¶¶ 6, 8, 12, 15, 16, 18, 19, 24, 30, 37, 38, 39, 44, 45, 46. In
addition, on at least two occasions (*see* Pl. SAF ¶¶ 31, 41), Plaintiff failed to sufficiently identify
the record citations which may support her statement of fact—suggesting, for example, that
entire depositions, or nearly forty page chunks thereof, support Plaintiff's factual claims. This
practice, too, is inappropriate under local rules and caselaw applying it. *See, e.g., Malec*, 191
F.R.D. at 583 ("specific reference" means page and paragraph numbers). It is not the job of the
Court to scour through entire depositions, or 40 page pieces thereof, to attempt to determine if a
litigant's factual claims are well-taken; in fact, doing so would delay the adjudication of motions
and cases involving litigants who have actually complied with well-settled local rules designed
to facilitate reasonably prompt adjudication of cases for everyone. As a result, the Court also
does not consider Plaintiff's improperly supported factual assertions.

[2] Defendants did not number their statements of fact in accordance with L.R. 56.1. The
Court will use the numbering provided by Plaintiff for those statements.

to Defendant's Statement of Facts ("Pl. Resp.") ¶ 1; Pl. SAF ¶ 4). The officers pulled over Falcone, and Officer Conzemius approached the vehicle. (Pl. SAF ¶ 5.) She inquired whether Falcone had been drinking, and Officer Conzemius also stated that Falcone's eyes were red. (*Id.* ¶ 6.) Falcone denied that she had been drinking. (*Id.* ¶ 7.) Officer Conzemius asserts that Falcone ultimately admitted that she had consumed some alcohol that evening. (Def. SF ¶ 3.) Falcone denies that she told the officer she had anything to drink (Pl. Resp. ¶ 3), but there is no dispute that Plaintiff had consumed "a few sips" of alcohol that evening (*id.* ¶ 2).

Officer Conzemius asked Falcone to get out of her car, which Falcone did, leaving it running with the driver's side door open. (Def. SF ¶ 4.) The officer then had Falcone perform a series of field sobriety tests. (*Id.* ¶ 5.) These tests included the horizontal-gaze nystagmus test, one-leg stand test, and walk-and-turn test. (Pl. SAF ¶¶ 9, 11, 13.) Falcone submitted uncontroverted testimony by her proposed DUI expert that the manner by which each of these tests was conducted was contrary to accepted protocol in at least some respects. (*Id.* ¶¶ 10, 12, 14.) For example, the results of the one-leg stand test and walk-and-turn test were unreliable because Falcone was wearing two-inch heels and had a medical condition (scoliosis). (*Id.* ¶¶ 12, 14.) Officer Carlson performed a finger-to-nose test on Falcone. (*Id.* ¶ 15.) Falcone's proposed expert testified that Officer Carlson, too, failed to observe the accepted protocol concerning this test, in that Ms. Falcone was asked to tip her head back during the test (an outdated technique, in the expert's view, as opposed to having the test-taker look forward). (*Id.* ¶ 16; Hanson Dep. at 39:8-41:17.)

After the field sobriety tests, Officer Carlson offered Falcone the opportunity to take a portable breathalyzer test ("PBT"). (Pl. SAF ¶ 17.) Defendants assert that Falcone initially refused to blow into the PBT unit (Def. SF ¶ 6, but Falcone denies this (Pl. Resp. ¶ 6). Rather,

Falcone maintains that she merely requested a clean mouthpiece. (*Id.*, Pl. SAF ¶ 18.) At this point, Officer Carlson decided to arrest Plaintiff. (Def. SF ¶ 7.) According to Defendants, Falcone has admitted that after being told that she was under arrest for DUI, she became confused and turned away from the officers and toward her running automobile. (*Id.* ¶ 8.) But Falcone's testimony is that she was not placed under arrest until after she had turned and that all she did was turn to look at her vehicle. (Pl. Resp. ¶ 8, Pl. SAF ¶ 18.)

Defendants assert that a struggle ensued and the officers were unable to control Falcone. (Def. SF ¶¶ 9, 10.) Falcone denies struggling with the officers or resisting arrest (Pl. Resp. ¶¶ 9,10[3]), but she was later found guilty of resisting arrest under Illinois law (Def. SF ¶ 18), an offense that requires some physical resistance to the arrest as opposed to mere verbal opposition. *See, e.g., Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995).

While arresting Falcone, Officer Carlson executed a "leg sweep" maneuver,[4] apparently to bring her to the ground and under control. (*Id.* ¶ 11.) Falcone disputes that she needed to be brought under control. (Pl. Resp. ¶ 11, 12.) Falcone was already handcuffed at the time that Officer Carlson performed the leg sweep, and the officer also slammed Falcone's face down

---

[3] Defendants state, "A struggled [sic] immediately followed the Plaintiff's decision to turn away from the Officers and towards her running automobile . . . ." (Def. SF ¶ 9.) Falcone's denial states, "The Plaintiff denies that she struggled with the officers." (Pl. Resp. ¶ 9.) She does not, however, deny that there *was* a struggle. Moreover, as stated above, Ms. Falcone was found guilty beyond a reasonable doubt in the courts of Illinois of resisting arrest, which requires at least some unlawful physical resistance to the police officer's efforts to effect the arrest.

[4] A "leg sweep," according to Officer Carlson, consists of putting "one leg in front of the person, setting on their foot or in front, and you walk them over your leg." (Pl. SAF ¶ 22.) Officer Carlson testified that the use-of-force maneuver is appropriate only for "active resisters" and that he was trained to perform it with the assistance of another trained officer and not alone. (*Id.* ¶¶ 24, 28.) It appears to be undisputed that only Officer Carlson (and not his partner) was trained in this use-of-force technique, at a time when Carlson previously worked for the Dane County, Wisconsin, Sheriff's Department as a correctional officer. (Pl. SAF ¶ 29.)

onto the trunk of her car during the arrest. (*Id.*, Pl. SAF ¶ 30.)

Falcone was brought to the Hanover Park police station. (Def. SF ¶ 12.) At the station, Falcone was able to walk and stand without any problem. (Pl. SAF ¶ 32.) She was given a breathalyzer test by Defendant Officer Kozenczak, and the result was a 0.000 blood alcohol level. (Pl. Resp. ¶ 13.) During the test, Officer Kozenczak attempted to smell an odor of alcohol on her but did not smell any. (*Id.*, Pl. SAF ¶ 33.)

Officer Conzemius then decided to take Falcone to the hospital for blood tests. (Def. SF ¶ 14.) Neither Sergeant Ciancio nor Officer Kozenczak ordered Officer Conzemius to take Falcone to the hospital (*id.* ¶ 15), but Sergeant Ciancio suggested that she do so, and Officer Kozenczak advised and recommended the same. (Pl. Resp. ¶ 15; Pl. SAF ¶¶ 37, 38, 42.) Sergeant Ciancio knew Falcone's breathalyzer result was 0.000 and did not inquire into whether Officer Conzemius had any basis to believe that Falcone was under the influence of anything other than alcohol. (Pl. SAF ¶ 43.) Defendants assert that Falcone consented to the blood tests. (Def. SF ¶ 17.) Falcone disputes this by her affidavit testimony that her "consent" was given only under threats, duress, and coercion from Officer Conzemius's informing her that a refusal would result in summary suspension of her driver's license. (Pl. Resp. ¶ 17.) The results of the blood and urinalysis tests were negative. (Def. SF ¶ 18.)

Plaintiff testified that the officers told her at the scene of the traffic stop that she was under arrest for DUI and improper lane usage. (Pl. SAF ¶ 44.) Before Falcone was let out on bond, Officer Conzemius informed her that she was also being charged with resisting arrest and battery to a police officer. (*Id.* ¶ 44.) The DUI and improper-lane-usage charges were dismissed before trial. (Falcone Dep. at 67:15-22.) Falcone was ultimately convicted of resisting arrest and acquitted of the battery charge. (Def. SF ¶ 19; Falcone Dep. at 67:23-68-4.)

As a result of the arrest and events surrounding it, Falcone alleges that she suffered severe emotional injuries that required extensive medical treatment for her emotional damage. (Pl. SAF ¶ 45.) Plaintiff also alleges that she suffered injuries to her back, shoulder, and neck. (*Id.*)

Falcone filed this lawsuit against Defendants alleging: Defendants Conzemius and Carlson used excessive force during her arrest in violation of the Fourth Amendment (Count I); Defendants Conzemius, Kozenczak, and Ciancio unlawfully searched her by obtaining blood and urine samples without any basis for doing so and without her voluntary consent in violation of the Fourth Amendment (Count II); Defendant Village of Hanover Park had a practice or custom that resulted in the violation of various constitutional rights (Count III); the conduct of Defendants Conzemius and Carlson constituted intentional infliction of emotional distress (Count IV); the Village of Hanover Park is liable for the acts committed by Officers Conzemius and Carlson in the scope of their official duties (Count V); and Officers Conzemius and Carlson falsely arrested her (Count VI). (D.E. 57.) The Court granted Falcone's motion to voluntarily dismiss Count I against Officer Conzemius and to dismiss Count III. (D.E. 44.) Defendants have moved for summary judgment on the remaining counts. (D.E. 40.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue

of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999)

(citation omitted). The Court views the record and all reasonable inferences drawn therefrom in

the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56(c); *Foley v. City of Lafayette*,

359 F.3d 925, 928 (7th Cir. 2004).

DISCUSSION

I.      Count I – Excessive Force

In Count I, Plaintiff alleges that Officer Carlson's actions of "physically abusing and

otherwise using unreasonable and unjustifiable force" against her violated her Fourth

Amendment rights and thereby violated 42 U.S.C. § 1983. (D.E. 57 ¶ 22.) Defendants argue

that summary judgment is proper on Count I because Officer Carlson is entitled to qualified

immunity.[5] "Police officers are entitled to qualified immunity for actions taken during a stop or

arrest insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d

737, 744 (7th Cir. 2001) (internal quotations omitted). In determining whether an officer is

entitled to qualified immunity, "the first inquiry must be whether a constitutional right would

have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If no

constitutional right has been violated, that is the end of the qualified immunity analysis. *See id.*

at 201. In making this assessment in the context of summary judgment, Seventh Circuit teaches

that the nonmovant's version of disputed facts must be taken as true. *See, e.g., Payne v. Pauley*,

---

[5] Falcone's Response answers an argument that Defendants did not make regarding
Count I in its motion: the excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 47
(1994). (Defendants argued that Counts II and IV are barred by *Heck.*) Defendants' Reply
attempts to incorporate the *Heck* argument as an alternative to qualified immunity. (D.E. 55 at 3,
6-9.) Because it was not argued until the reply brief, however, the Court will consider only
Defendants' qualified immunity defense as to Count I.

337 F.3d 767, 775 (7th Cir. 2003) (collecting cases); *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003). If a violation could be made out on the undisputed facts taken in the light most favorable to the plaintiff, the next step "is to ask whether the right was clearly established." *Id.*

When a claim of excessive force arises in the context of an arrest, the Court evaluates the officer's use of force "according to the reasonableness standard of the Fourth Amendment." *Morfin*, 349 F.3d at 1004 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 349 U.S. at 396 (internal quotation, citation and alteration omitted); *see also Morfin*, 349 F.3d at 1004. This constitutional inquiry is an objective one, and "it is implemented 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003) (quoting *Graham*, 490 U.S. at 396). A court is to "balance the amount of force used in relation to the danger posed to the community or to the arresting officer." *Smith v. City of Chicago*, 242 F.3d at 743. Moreover, "when material facts (or enough of them to justify the conduct objectively) are undisputed," the question of the reasonableness of the force is for the Court to decide. *Bell*, 321 F.3d at 640. If, however, material facts are in dispute as to whether the police "acted unreasonably because they

responded overzealously and with too little concern for safety," the case must go to a jury. *Id.* Precedent makes clear that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Taking the facts in the light most favorable to Falcone, *see Saucier*, 533 U.S. at 201, the Court finds that there are material factual disputes and gaps in the factual record as presented by the parties concerning the propriety of the force used by Officer Carlson. As a result, and as explained further below, the motion for summary judgment on Count I is denied.

Defendant Officer Carlson's principal arguments in support of summary judgment are based on an analytical approach that is inconsistent with Seventh Circuit precedent—namely, Carlson's arguments are predicated on the notion that in assessing whether his actions were objectively reasonable from the perspective of an officer on the scene, the Court must credit Carlson's view of disputed factual matters. (In this regard, Carlson repeatedly seeks to rely on his view of disputed facts—*e.g.*, D.E. 55 (Def. Reply) at 1-2—ranging from whether Carlson saw Falcone committing pre-stop traffic violations consistent with the actions of an intoxicated driver, to the idea that Plaintiff was attempting to flee the scene when subjected to physical force. *Accord* D.E. 40 at 4 (discussing evidence from perspective of Officer Carlson).) But this approach—*i.e.*, that the officer's view of truly disputed factual issues that are material to the propriety of summary judgment must control—is not sanctioned by Seventh Circuit precedent. *See, e.g., Payne*, 337 F.3d at 775 (reversing grant of summary judgment for defendant and stating, "[t]o determine whether Officer Pauley is entitled to qualified immunity, we must first ask whether the facts as alleged, taken in the light most favorable to Payne, show that Officer Pauley violated a constitutional right").

9

At least according to Falcone's evidence (and the Court takes no position, of course, on whether her version is true), Falcone was not committing any traffic violations before she was stopped. Although the parties agree that Falcone left her car with the ignition running after being stopped by the officers, Falcone contends this was at the direction of the officers. (Pl. Resp. to Defs.' SF ¶ 4). The parties do not discuss where the field DUI tests thereafter took place, or even how Falcone performed on them.[6] Falcone admits that she turned away from the officer toward her running vehicle at the conclusion of the tests, but Falcone disputes that she did anything more than turn to look at her vehicle. (Pl. Resp. to Defs.' SF ¶ 8). And while one might readily posit circumstances that might prompt an officer to decide that some use of force was required to take down Falcone before she could return to a running car so as to potentially pull out onto the road, Defendant Carlson offers no detailed information or review of evidence concerning subjects such as: how far Falcone was away from her running vehicle; whether Falcone was rushing or even moving rapidly toward the car; whether there was an officer between Falcone and the car door, etc.

The parties further dispute the particulars of the events immediately preceding the use of force in the form of the leg sweep maneuver. We must all agree that Plaintiff must be taken to have unlawfully offered at least some form of physical resistance, given her conviction for

---

[6] Defendants do not even specifically state that Falcone failed the tests. (*See* Def. SF ¶ 5 ("The Plaintiff performed a series of field sobriety tests.").) One might infer that Falcone did not perform well, in that she has offered expert testimony concerning the alleged unreliability of the tests, but as anyone who has prosecuted or defended a DUI case knows (and as common sense suggests), there are a broad range of possible results. In the absence of any information about the actual results, the Court will not speculate whether they provided a reasonable and objective (albeit mistaken) basis to conclude or suspect that Falcone was intoxicated.

resisting arrest under Illinois law;[7] but the crime of resisting arrest only requires *some* unlawful

physical resistance, *see People v. Weathington*, 411 N.E.2d 862, 863-864 (Ill. 1980) (holding

that mere argument with police officer does not violate resisting arrest statute but declining to

decide whether activity falling between argument and physical act could violate statute); *People*

*v. Raby*, 240 N.E.2d 595, 601 (Ill. 1968) (holding that "going limp" constitutes physical

resistance for purposes of statute), and the parties disagree about whether Plaintiff was doing

anything threatening at the time of her arrest. In addition, one of Plaintiff's statements of fact

and the testimony cited in support of it (Pl. SF ¶ 12) suggest that the officers on the scene were

apprised that she had scoliosis. The Defendants fail to discuss the issue at all. The evaluation of

whether the employment of a particular use-of-force technique on Plaintiff, a 57 year-old

woman, was constitutionally objectionable also likely would be affected by whether Falcone

indicated that she had scoliosis and whether Officer Carlson had any reason to believe or reject

that representation (*e.g.*, did Ms. Falcone appear to visibly suffer from the effects of this

condition when she was standing or moving that night). Given the limited evidence cited on this

issue, and Defendant Carlson's failure to address it, this factual dispute and reasonable factual

inferences relating to it must be resolved in Falcone's favor. In essence, this is yet another

factual gap that belies the propriety of summary adjudication on the basis of the papers

submitted.

With respect to the leg sweep takedown, and again, taking the disputed facts most

favorable to Falcone, the evidence shows that such a maneuver (at least according to Plaintiff's

expert) only should be used on an active resister, that the maneuver is designed to be used by

---

[7] *See, e.g., Ryan v. Couty of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995) (discussing elements of resisting arrest under Illinois law).

two police officers and not one, and that even if the maneuver worked well, Plaintiff likely

would be forced face-first to the ground or pavement. (*E.g.*, Pl. SAF ¶¶ 23-24). It is undisputed

that while Officer Carlson was trained in the use of the leg-sweep maneuver, back when he

worked as a jailer for the Dane County, Wisconsin, Sheriff's Office (Pl. SAF ¶ 29), his colleague

on the scene, Officer Conzemius, was not trained in the technique, and it appears that the

technique is not generally employed by the Hanover Park police. (Pl. SAF ¶¶ 25, 29.) Lastly,

although it would likely not be material standing alone, the parties also disagree about whether

Falcone's face was slammed against the hood of the car during the arrest.

Given this myriad of factual disputes and gaps in the factual record as presented, the

Court finds that Defendant Carlson has failed to carry his burden of showing that summary

dismissal of Count I is appropriate. *See Morfin*, 349 F.3d at 1005 ("If a jury were to credit Mr.

Morfin's version of events over that of the arresting officers, it could conclude that there was no

reason for the officers to exert such force on Mr. Morfin.") In this regard, the Court notes that

Carlson makes no meaningful argument that he lacked notice that a use of such force, taking

circumstances as framed by interpreting the factual disputes and gaps in the record in Falcone's

favor, would be prohibited under the law. *See generally Payne*, 337 F.3d at 775-76.[8]

The Court also briefly notes that Defendant's legal citations are not controlling on the

---

[8] These factual gaps and conflicts likewise render summary judgment inappropriate under the multi-factor test identified by Officer Carlson. *See* D.E. 40 at 4. There is no evidence, taking Falcone's view of things, that she was in fact a drunken driver, bearing on the severity of any crime at issue and any danger Falcone might pose to herself or others. Similarly, there are factual gaps about whether, even if Falcone were drunk, she presented any meaningful risk of getting back to her car before the officers could simply grab her (a fifty-seven year old woman) by the shoulders or waist. There also are factual disputes concerning what degree of physical resistence Falcone used in resisting arrest and whether she in fact was attempting to evade the scene. Taken together, these factual disputes render summary judgment inappropriate.

facts of this case—again, at least taking Falcone's version of truly disputed facts. *Smith v. Ball State Univ.*, 295 F.3d 763, 766-67, 770 (7th Cir. 2002), for example, involved an instance where the officers reasonably interpreted, based on undisputed facts, that the semi-coherent plaintiff who crashed his car, nearly hit pedestrians, and was flailing with officers from behind the wheel of his car, was an intoxicated and combative driver, notwithstanding that the plaintiff actually was suffering from a diabetic coma. But reading the factual disputes and gaps most favorably to Falcone, she alleges that she gave no objective signs whatsoever of being intoxicated and was not a meaningful threat that required a serious use of force.

Similarly, *Bell v. Irwin*, 321 F.3d 637 (7th Cir. 2003), is clearly distinguishable, as the plaintiff who was subjected to use of potentially deadly force (in the form of beanbag rounds propelled by a shotgun), on the undisputed facts clearly presented an imminent and serious danger to himself and others. The plaintiff was in possession of several knives and a meat cleaver, had driven one of the knives into the wall by his front door and hurled others in the direction of the police, had told the police chief that he would kill any officer who tried to apprehend him and then would kill himself, and was threatening to blow up his home with propane and kerosene. *Id.* at 638-39. Although it is certainly possible that the facts of the instant case involved a clear and serious danger—for example, if a fact-finder were to reject some or all of Falcone's version of the events, or if she were found to be in a position vis-a-vis her car where she presented a non-frivolous risk of reentering her vehicle and fleeing onto the road—the few undisputed facts in the record *sub judice* bear no meaningful resemblance to those in *Bell*.

In short, there are extensive factual disputes and gaps concerning the excessive force claim that renders summary adjudication inappropriate. *See generally Gregory v. Oliver*, 226 F.

13

Supp. 2d 943, 950-52 (N.D. Ill. 2002) (refusing to summarily dismiss leg sweep case with disputed material facts). Defendant's motion is denied with respect to Count I.

II.     Counts II & VI – Unreasonable Search & Seizure and False Arrest

In Count II, Falcone alleges that Officers Conzemius and Kozenczak and Sergeant Ciancio violated her Fourth Amendment right to be free from unreasonable searches and seizures by taking blood and urine samples from her without any basis to do so, or by not intervening to stop such searches and seizures when they had a duty to do so. (D.E. 57 ¶ 25.) In Count VI, Falcone alleges that Officers Conzemius and Carlson falsely arrested and charged her with battery, DUI, and improper lane use, even though they lacked probable cause to do so. (*Id.* ¶ 41-42.) Defendants argue that these claims are precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994). Alternatively, Defendants argue that Officers Conzemius and Kozenczak had probable cause to arrest Falcone, and that Plaintiff has put forward no evidence to support any allegations against Officer Kozenczak and Sergeant Ciancio.

A.  Count VI – False Arrest and *Heck v. Humphrey*

Falcone may not bring a claim under Section 1983 if a judgment in her favor would "necessarily imply the invalidity" of her conviction for resisting arrest. *Heck*, 512 U.S. at 487. Defendants argue that Falcone's claims of false arrest (and also unreasonable search and seizure) are barred by *Heck* because Plaintiff has been convicted.

Defendants rely on *Case v. Milewski*, 327 F.3d 564 (7th Cir. 2003), for the proposition that *Heck* bars a Fourth Amendment claim for false arrest where the plaintiff has been convicted of a crime stemming from that arrest. While agreeing with Defendants that the Seventh Circuit held that the plaintiff's claim for unlawful arrest was barred by *Heck* in that case, *id.* at 568-69, (and agreeing further, as explained below, that Falcone's false arrest claim is barred in this case

14

under *Heck*), the Court respectfully declines to read *Case* as implementing a categorical rule that *any and all* claims for unlawful arrest are barred by a subsequent criminal conviction that stems from that arrest. The Seventh Circuit, before *Case* and after, has consistently held that whether a conviction precludes an unlawful arrest claim is a question to be determined by examining the facts in the particular case at hand. *See, e.g., Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) ("[A] wrongful arrest claim does not necessarily undermine a conviction"); *Booker v. Ward*, 94 F.3d 1052, 1056 (1996) ("[A] wrongful arrest claim . . . does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction."); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (teaching that whether a plaintiff's claim is *Heck*-barred should not be evaluated by seeing if there is a "theoretical possibility" that plaintiff can advance a theory of liability that does not undermine the legitimacy of her criminal conviction, but rather should be evaluated by seeing whether plaintiff's theory includes "allegations that are inconsistent with the conviction's having been valid"; if the latter, "*Heck* kicks in and bars his civil suit.").

Nonetheless, Defendants correctly argue that for Falcone to succeed on her false arrest claim, it would necessarily impugn the validity of her conviction on the facts of this case.[9] The

---

[9] Defendants point out in their Reply brief that Plaintiff's Response is non-responsive to the *Heck* argument. Plaintiff's brief assiduously ignores the Supreme Court's teaching in *Heck v. Humphrey*, 512 U.S. 477 (1994), and instead makes an extended argument about Illinois collateral estoppel law that is fundamentally predicated on Illinois precedent that was overruled in material part by the Illinois Supreme Court in 2000. *See* Pl. Resp. at 2-3 (repeatedly citing *Thornton v. Paul*, 384 N.E.2d 335, 343 (Ill. 1978), and precedent applying it); *see also American Family Mutual Ins. Co. v. Savickas*, 739 N.E.2d 445, 450 (Ill. 2000) ("[W]e overrule . . . that portion of *Thornton* regarding the effect of a prior conviction in a subsequent civil case."). To be sure, each one of us (this Court certainly included) makes mistakes. But Ms. Falcone's extended reliance on long-overruled Illinois law, combined with her extensive and wholly improper reliance on unpublished Seventh Circuit authority (discussed further below) and her failure to include complete copies of the deposition material she cited in her factual statements,

actual existence of probable cause defeats a Section 1983 claim for false arrest. *See Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003). Thus, in order for her to prevail, she would have to convince a trier of fact that no probable cause existed for her arrest.

In Falcone's Complaint, she does not argue that her arrest for resisting arrest was made without probable cause. This omission is understandable, given her conviction beyond a reasonable doubt for resisting a peace officer. In her Response to Defendants' argument as to the existence of probable cause for her arrest, however, Falcone sets forth her theory why summary judgment is improper on her false arrest claim due to lack of probable cause for her arrest. First, Falcone argues that she has consistently "flatly denie[d] that she resisted arrest" (D.E. 47 at 2), and that under Illinois law she cannot be precluded from arguing the same in her civil suit. Second, Falcone argues that the resisting arrest charge was merely an *ex post facto* justification for her allegedly unlawful arrest for driving under the influence and improper lane usage. (*Id.* at 4.)

The first prong of this theory is fundamentally flawed because it relies on overruled Illinois law concerning the collateral estoppel effect of a criminal conviction in subsequent civil litigation. See note 9, *supra*. Moreover, Falcone's theory ultimately would require a trier of fact to find that there was no probable cause for Ms. Falcone's charge for resisting arrest (and subsequent conviction thereof). Her act of resisting arrest occurred as part of the single, integrated roadside episode on the evening of February 3, 2002, that led to the charges against

---

impeded the efficient and sensible resolution of the summary judgment motion. The pace of justice for all litigants is harmed by parties who invite detours based on caselaw that has been overruled, caselaw that cannot be cited under a well-settled rule of the Seventh Circuit, and incomplete factual presentations. In any event, the effect of state collateral estoppel law is a separate and distinct question from whether a federal claim is barred under *Heck*.

her. Because the charge of resisting arrest is closely related to the other charges and selfsame arrest that Ms. Falcone disputes, a finding that probable cause existed for the resisting arrest charge would defeat her false arrest claim. *See, e.g., Case*, 327 F.3d at 566, 568-69 (rejecting false arrest claim in case where plaintiff was arrested after single episode for resisting arrest, disorderly conduct, and assault, after plaintiff was convicted only of resisting arrest); *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993) (in false arrest action, "probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge"); *Harper v. Mega*, No. 96 C 1892, 1998 WL 473427, *6 (N.D. Ill. Aug. 7, 1998) (conviction for resisting arrest defeated wrongful arrest claim concerning closely related charges of battery and disorderly conduct); *see also Penn v. Harris*, 296 F.3d 573, 576-77 (7th Cir. 2002) (finding that plaintiff failed to meet the lack-of-probable cause element of a malicious prosecution claim relating to battery charge that was later dropped, when plaintiff nonetheless could have been arrested and charged with disorderly conduct for the same episode). Due to the contemporaneous nature of Falcone's actions and her arrest and the charges brought against her that evening, her argument that the resisting arrest charge was an *ex post facto* justification for an otherwise unlawful arrest would only square with the events of that evening if she did not, in fact, resist arrest as found by the criminal factfinder. In addition, the total sum of evidence against Falcone relating to the resisting arrest charge came from the officers whose testimony she unsuccessfully challenged in state court. Thus, in order for her to prevail, a trier of fact necessarily would have to believe her version of events, namely, that she did not in fact resist arrest. A judgment on that ground would impugn her conviction, and therefore, her false

arrest claim is barred by *Heck*.[10] Defendants' motion for summary judgment on Count VI, the

false arrest claim, is granted.[11]

    B. Count II – Unlawful Search and Seizure Claim

    Defendants moved for summary judgment on Count VI (the false arrest claim) and Count

II (the unlawful search and seizure related to the blood and urine tests) together in their briefs.

---

[10] In addition to discussing overruled Illinois caselaw concerning collateral estoppel (Pl. Resp. at 1-2), Falcone attempts to distinguish cases such as *Biddle* and *Penn* on the basis that "none of those cases involves a situation, as here, where the plaintiff was convicted of the offense, but denied any facts that would have supported probable cause to arrest her for that offense." (Pl. Resp. at 3.) This statement merely confirms why Plaintiff's claim is *Heck*-barred. Plaintiff was convicted beyond a reasonable doubt, and "if [s]he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (collecting cases). Plaintiff also advances an argument in support of her false arrest claim that is fundamentally predicated on *Williams v. Vazquez*, 62 Fed. Appx. 686 (7th Cir. 2003). As the "Fed. Appx." publication reference makes very clear, *Williams* is an unpublished decision of the Seventh Circuit, and its citation here is expressly prohibited by Seventh Circuit Rule 53, which is specifically referenced on printed copies of the decision, which copies all state "Not to be cited per Circuit Rule 53." *Id.* Needless to say, Plaintiff's citation of *Williams* and her argument based upon it are improper and will not be considered. *See, e.g., Retired Chicago Police Ass'n v. City of Chicago*, No. 90 C 407, 1994 WL 110170, *2 (N.D. Ill. March 29, 1994) ("party's] citation of an unpublished Seventh Circuit opinion . . . is entirely inappropriate. Unpublished orders are clearly marked 'not to be cited per Circuit Rule 53.'").

[11] Falcone's argument that she was told when placed in custody that she was being arrested for illegal lane usage and driving under the influence, but was told later that evening, upon her release, that she was also being charged with battery and resisting arrest does not change the outcome. Statements made by an officer at the time of arrest and the officers' other subjective beliefs as to the legal basis for the arrest are not generally relevant to judge whether probable cause existed for arrest. *See Richardson v. Bonds*, 860 F.2d 1427, 1430 (7th Cir. 1988). Although Falcone argues that the charge for resisting arrest was merely an *ex post facto* extrapolation of the crimes which might have been charged, *see id.* at 1431, that argument fails, as described above, because the resisting arrest (which led to the conviction) was part of the selfsame episode encompassing the other charges. Particularly in light of the conviction for resisting arrest, Falcone has offered no evidence that the resisting arrest charge was "extravagant or novel" or "based on 'stale' facts that could have formed the basis for an earlier arrest." *Id.* There is simply no reason for the Court to believe this was a case of "arrest now, explain later." *Id.*

Defendants have offered no argument as to the applicability of *Heck* to Falcone's allegation of unlawful search and seizure via the blood and urine tests, and the Court finds none. The blood and urine samples, even if taken unlawfully, were taken from Falcone well after the actions that supported her resisting arrest conviction. It is quite possible that a trier of fact could find that she resisted arrest while at the roadside, and then was unlawfully searched or seized by the taking of the samples at the hospital and/or police station. A judgment on that ground would not necessarily impugn her resisting arrest conviction. Thus, Defendants' motion for summary judgment on Count II is denied on *Heck* grounds.

Defendants also make no meaningfully developed argument that there was probable cause for the searches and seizures at issue, although Defendants mention the unlawful search and seizure claim in their Reply to argue that they have not *conceded* that the officers did not have probable cause to take the samples from Falcone (D.E. 55 at 3). Defendants also respond to Falcone's argument that Count II is controlled by *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002),[12] merely by arguing, summarily, that Falcone's reliance on *Herzog* is misplaced

---

[12] In *Herzog*, the plaintiff alleged that she was driving home from a dinner at which she had consumed two sips of wine. 309 F.3d at 1042. She pulled over to the side of the road to check out a problem with her car, having committed no speeding or other traffic violation. *Id.* A police officer pulled over behind her, pushed her down, made her perform some kind of field sobriety tests (which she passed), and then made her blow into a personal breath screen device (which result was 0.00). *Id.* at 1043. The officer took the plaintiff to the police station and ultimately took her to the hospital for blood and urine tests. *Id.* The plaintiff was told that if she refused either test, the consequence would be to lengthen the period for which her drivers license would be suspended. *Id.* The Seventh Circuit, taking as true the plaintiff's statement of facts, held that "[f]orcible extraction of blood when there is no reason to think it will yield evidence of crime is an unlawful search" that violates the Fourth Amendment. *Id.* at 1044 (citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989); *Schmerber v. California*, 384 U.S. 757, 769-72 (1966); *United States v. Husband*, 226 F.3d 626, 620 (7th Cir. 2000)). The Court rejected the notion that the plaintiff consented to the tests, on the ground that her consent under the threat of longer suspension was a "coerced consent." *Id.*

in light of Officer Conzemius's observations of Falcone acting strangely before her arrest. (D.E. 55 at 6.) But Defendants have not pointed to uncontroverted facts that would support summary judgment in their favor as to Count II. Simply put, regardless of whether Plaintiff is correct that *Herzog* controls the outcome of this case (and Plaintiff has not sought summary judgment in her favor on this claim), Defendants have given the Court no legal or factual basis to grant them judgment as a matter of law on this count.

As a result, the Court will address only Defendants' argument that Count II should be dismissed against Officer Kozenczak and Sergeant Ciancio because, in Defendant's view, Falcone has presented no evidence against Officer Kozenczak and Sergeant Ciancio to support her allegation that these officers had her submit to blood and urine tests. Defendants argue that whether Falcone consented to the tests or not, Sergeant Ciancio and Officer Kozenczak did not order Officer Conzemius to take Falcone to the hospital for testing. (D.E. 40 at 13.) As explained below, this argument is unavailing.

The Seventh Circuit teaches that,

> [W]hile it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required. *See, e.g., Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). "An official satisfies the personal responsibility requirement of § 1983 if she acts *or fails to act* with a deliberate indifference or reckless disregard of the plaintiff's constitutional rights." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable. *See, e.g., Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

*Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (emphasis in original). This rule has been applied in the context of false arrest, *see Morfin*, 349 F.3d at 1001, and Defendants offer no authority or even argument that the rule should not be applied in this case in the context of an allegedly unlawful search and seizure. As for putative liability of supervisors, the Seventh

20

Circuit instructs that the question of liability under § 1983 turns on whether a supervisor "approved, condoned, or turned a blind eye" to the allegedly unconstitutional acts. *Id.*

Here, if Falcone is ultimately able to prove that the taking of her blood and/or urine samples violates her Fourth Amendment rights (which issue the Court need not reach here), she has come forward with sufficient evidence of Sergeant Ciancio's and Officer Kozenczak's involvement to defeat summary judgment in their favor on Count II. Falcone has put forth evidence—and Defendants have either admitted the facts for purposes of this motion or had them deemed admitted by failing to properly object to Falcone's factual claims—that Officer Kozenczak, who performed the breath test at the police station, knew that Falcone was not intoxicated based on her test results. (Pl. SAF ¶¶ 33-36.) Additionally, Kozenczak testified that during the time he was with Plaintiff, there was nothing about her behavior to indicate` that she was under the influence of drugs or any other intoxicant. (*Id.* ¶ 38.) Officer Kozenczak allegedly advised and recommended to Officer Conzemius that she take Falcone to have blood or urine tests. (*Id.* ¶ 38.) Based on this evidence, it is possible that a trier of fact could find that Officer Kozenczak had a "realistic opportunity to step forward and prevent a fellow officer from violating [Falcone's] rights" and failed to do so. *Miller*, 220 F.3d at 495.

Likewise, Falcone has put forth evidence that Officer Conzemius approached Sergeant Ciancio to ask his advice about whether to require Falcone to submit to blood and urine testing. (*Id.* ¶ 42.) Ciancio knew that Falcone had recorded a 0.000 on the blood alcohol breath test, and Ciancio did not inquire as to whether Officer Conzemius had any basis to believe that Falcone was under the influence of anything other than alcohol. (*Id.* ¶ 43.) Based on this evidence, it is possible that a trier of fact could find that Sergeant Ciancio "approved, condoned, or turned a blind eye" to a violation of Falcone's rights, if any occurred. *Morfin*, 349 F.3d at 1001. At a

21

minimum, as the matter has been briefed to this point, it is clear that summary judgment against

Falcone's unlawful search and seizure claim would be inappropriate. Defendants' motion for

summary judgment on Count II is therefore denied.[13]

III.     Count IV – Intentional Infliction of Emotional Distress

In Count IV, Falcone alleges that Officer Carlson's and Officer Conzemius's conduct on

the night of her arrest was "extreme and dangerous," and that it caused severe emotional distress.

(D.E. ¶¶ 34-36.) Defendants' motion to dismiss this count is granted.

To state a claim for intentional infliction of emotional distress ("IIED"), Falcone must

establish that: (1) the officers' conduct was extreme and outrageous; (2) the officers either

intended that their conduct should inflict severe emotional distress, or knew that there was a high

probability that their conduct would cause severe emotional distress; and (3) the officers'

conduct in fact caused severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506

(Ill. 1994); *accord Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 651 (7th Cir. 2003).

As the Seventh Circuit and Supreme Court of Illinois have repeatedly instructed, the

standards to prevail on an IIED claim are quite high. The conduct at issue must be both

"extreme and outrageous." *Doe*, 641 N.E.2d at 507. "The nature of the defendant's conduct

must be so extreme as to go beyond all possible bounds of decency and be regarded as

intolerable in a civilized community." *Dunn*, 347 F.3d at 651 (internal quotation omitted);

---

[13] Defendants make no argument as to why summary judgment is proper on Count V, which the Seventh Circuit teaches is essentially a provision rendering a municipality an insurer of its employees under certain circumstances when they are acting within the scope of their employment. *See Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). At this juncture, there is no reason for the Court to believe that the officers were acting outside the scope of their employment (the undisputed facts almost certainly indicate that every officer was so acting), and Defendants' motion for summary judgment on Count V is denied.

*accord Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir 1997) ("Conduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency.") (internal quotation and citations omitted); *Doe*, 641 N.E.2d at 507 (teaching that "[c]onduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'") (citations omitted). Precedent teaches that misconduct does not meet this demanding standard merely because it is "characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Van Stan*, 125 F.3d at 567 (internal quotation and citation omitted). Nor, for example, from the employment law context, is misconduct necessarily extreme and outrageous even where it is sufficient to constitute sexual harassment. *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) (collecting cases). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Doe*, 641 N.E.2d at 507 (citation omitted).

While analysis of an IIED claim is a case-specific endeavor, precedent makes clear that Ms. Falcone's IIED claim is unavailing. In this regard, the citations Ms. Falcone offers reveal the weakness of her position. For example, Ms. Falcone first cites *Pierce v. Pawelski*, No. 98 C 3337, 2000 WL 1847778 (N.D. Ill. Dec. 14, 2000) (Gottschall, J.). But *Pierce* did not even analyze the sufficiency of the IIED claim; instead, it evaluated the defendants' argument that the IIED claim in that case was time-barred under the applicable statute of limitations. *Id.* at *3.[14]

---

[14] The defendants in *Pierce* also appear to have made the argument that the plaintiff's IIED claim could not be advanced under 42 U.S.C. § 1983. *Pierce*, 2000 WL 1847778, at *4. The Court rejected this claim because the plaintiff had not advanced any such claim. *See id.* ("[D]efendants are challenging a claim that has not been pled."). This portion of *Pierce* has no

As a result, *Pierce* has limited, if any, relevance here.

Even if *Pierce* were relevant authority, Falcone merely offers it for the proposition that an IIED claim can be "'based not just on the events occurring on the day of [a plaintiff's] arrest, but on defendants' participation in his wrongful prosecution and their allegedly false testimony at his trial.'" (Pl. Resp. at 12 (quoting *Pierce*, at \*3). This statement may be true in the abstract; however, it does not do anything for Ms. Falcone here. The allegations in *Pierce* included fabrication of evidence, including the creation of false documents, and false testimony at Pierce's trial. *Id.* at \*1. Even if *Pierce* could be read for the proposition that these allegations state a claim for IIED (notwithstanding that the decision did not address or analyze the issue), Falcone has not put forth any evidence to show that her case rises to this level. The Court has found nothing in the record to support the notion that the Officers fabricated evidence against her. And Ms. Falcone admits the DUI and improper lane-change charges against her were dismissed even before trial. (Falcone Dep. at 67:15-22.) As for the two (inextricably related) charges that did go to trial—battery and forcibly resisting arrest—Ms. Falcone was found guilty of the resisting arrest charge. (Id. at 67:23-68:4.) This is worlds apart from a situation where a trial proceeds on the basis of fabricated evidence.

Falcone also relies on *Evans v. City of Chicago*, No. 00 C 7222, 2001 WL 1028401 (N.D. Ill. Sept. 6, 2001) (Gettleman, J.), but that case involved a very different set of facts than this one. *Evans* held that the plaintiff stated a claim for IIED where he alleged that the defendant-police officers conducted a coordinated three-year campaign of harassment against him that included, *inter alia*, a naked strip search and anal search outside of his home; an unwarranted,

relevance to the instant case.

guns-drawn, home invasion of plaintiff's residence; multiple instances of fabricated testimony and arrests in felony narcotics cases; another naked beating, strip search, and anal search at the 11th District Chicago Police Station; and an episode of being paraded through the 11th District Station where officers were told they could arrest him on sight at any time in retaliation for plaintiff's stepping forward as a witness against two Chicago Police Officers who allegedly caused the wrongful death of another citizen. *See id.* at *13. As Defendants in the instant case rightly argue, the Court need not dwell long on *Evans* to conclude that the events as alleged by Falcone, let alone the evidence she has put forward at this juncture, do not remotely compare with the multi-year, dozen-plus-episode campaign of severe physical and emotional abuse alleged in *Evans*. While the Court does not treat lightly the injuries suffered by Falcone during her arrest, the events relating to her arrest and prosecution cannot fairly be analogized to anything approaching those in *Evans*.

Other caselaw makes clear that Ms. Falcone's IIED claim should be dismissed. For example, *Harper v. Mega*, No. 96 C 1892, 1998 WL 473427 (N.D. Ill. Aug. 7, 1998) (Manning, J.), dismissed an IIED claim against a plaintiff who alleged that he was subjected to repeated instances of virulent racist comments by Chicago Police Officers (including taunts of "nigger" and "monkey") before and after his disorderly conduct and battery arrest, that he was wrongfully subjected to battery and punching and being thrown against a wall in connection with his arrest, and that Chicago Police Officers located plaintiff while he was in a holding cell at the Cook County Jail awaiting sentencing and falsely shouted that plaintiff was a "child molester" and "cop killer" so that other inmates and correctional officers would hear the false information. *Id.,* at *1. The court reviewed Seventh Circuit precedent and found that the allegations in *Harper* were not such that they transcended all possible bounds of human decency. *Id.* at *7-8. This

25

precedent included *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993), where

the plaintiff, who was African-American, alleged that he was subjected to a continuous and

intentional campaign of racial discrimination at the hands of her employer which included:

prohibitions against supervising white employees; being forced out of a management position

and reprimanded for no reason; having her vehicle repeatedly damaged and vandalized in the

Tribune private employee parking lot; having Tribune management ignore her concerns about

her property and personal safety; the monitoring of plaintiff's calls with an eavesdropping

device; and improper refusal to allow plaintiff to participate in the Tribune's Management

Incentive Fund. *See Harper*, 1998 WL 473427, at *7-8 (reviewing *Harriston*). *Harper* noted

that the Seventh Circuit held that, even under these circumstances, the misconduct alleged "'was

not so severe that a reasonable person could not be expected to endure it, and it did not go

beyond all possible bounds of decency.'" *Harper* 1998 WL 473427, at *7 (quoting *Harriston*,

992 F.2d at 703).

 *Harper* also reviewed the Seventh Circuit's decision in *Oates v. Discovery Zone*, 116

F.3d 1161 (7th Cir. 1997).  In that case, the African-American plaintiff alleged that his name was

written underneath a monkey pictured in a photograph of a group of monkeys, which photograph

had been hung in plaintiff's general work area. *Id.* at 1164.  When the plaintiff complained to

his supervisor that he regarded the photograph as offensive, the supervisor allegedly told

plaintiff that "he was being 'over-sensitive'" and refused to remove it. *Id.*  Notwithstanding

these offensive actions, the Seventh Circuit "refuse[d] to go so far as to characterize them as

'truly extreme and outrageous' or 'beyond all possible bounds of decency,'" as is required to

advance an IIED claim under Illinois law. *Id.* at 1174 (internal citations omitted).

 In light of the cited precedent, the Court cannot conclude that the alleged misconduct in

the instance case, even if true, surpasses the high bar set in the precedent for an IIED claim under Illinois law. The alleged events occurred as part of a single incident, and there is no allegation that any of the defendants was stalking Ms. Falcone or engaged in any extended campaign of harassment against her. Instead, the events were all part of a single broader episode prompted by the officers' assignment to enforce prohibitions against drunk driving on a night when the police force very reasonably assumed (given that it was the evening of a Super Bowl) that many intoxicated drivers would be creating grave dangers on the roads. *See Doe*, 641 N.E.2d at 507 ("While all conduct is not immunized, more latitude is given to a defendant pursuing his legitimate objectives."). Ms. Falcone alludes to the fact that she was subjected to blood and urine tests, which if unwarranted were inappropriate and may be actionable, but there is no evidence whatsoever that these tests were not conducted in a humane manner by medical professionals. Ms. Falcone also alludes to the leg sweep and the fact that she has scoliosis, but the leg sweep was a single act (and not part of any relentless or severe beating, even at the hands of the single officer involved), and Ms. Falcone cannot deny that she was found guilty beyond a reasonable doubt of having physically resisted arrest from the officer or his partner. It is possible Ms. Falcone may be able to show that the force was actionably excessive, but it is nothing near, for example, the campaign of force (and degrading anal examinations and naked beatings) involved in *Evans, supra. See also DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1123 (N.D. Ill. 1997) (Hart, J.) ("In situations involving unlawful arrests or excessive force by police officers, there must be more than just a lack of probable cause or some excessive force. To qualify as extreme and outrageous, the force used must be very extreme or cause very severe physical injury."). The Court does not condone any misconduct that Ms. Falcone alleges occurred—assuming, of course, that her view of events is true, a subject that is clearly disputed.

27

But, with respect to the conduct alleged, it is not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Van Stan*, 125 F.3d at 567.

In addition, and alternatively, even if the Court were to find that the alleged misconduct was so extreme and outrageous as to be actionable under Illinois law, Ms. Falcone has put forth no evidence that the officers intended to inflict emotional harm on her or should have known that there was a high probability that their actions would result in such. *Compare Doe*, 641 N.E.2d at 508 (in light of plaintiff's complaint to officer of recent assault on her and threat to her children, officer should have known there was a high probability that his conduct would cause severe emotional distress when he dismissed plaintiff's pleas to help her children who were being sexually assaulted). There is nothing in the record to suggest that a reasonable trier of fact would conclude that the officers, who were generally performing their duties to quell a resisting citizen and investigate a suspected DUI, *intended* to cause Falcone emotional distress or disregarded a high probability of the same. Thus, Defendants' motion for summary judgment on Count IV is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted with respect to Counts IV and VI, and denied with respect to Counts I, II and V. Count III has previously been dismissed by agreement.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 12-9-04